

John B. McEntire, IV
*Senior Litigator*
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Corena L. Cabral

United States District Court
Eastern District of Washington
Honorable Stanley A. Bastian

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Corena L. Cabral,<br><br>　　　　　　Defendant. | No. 4:22-cr-6025-SAB-1<br><br>Sentencing Memo |

2,471 words | 10-min. read

## Table of Contents

I.    Introduction...............................................................................................................3

II.   Discussion ................................................................................................................5

      A.    What happened................................................................................................5

            1.    Ms. Cabral moved to Nevada to care for her ailing mother.........................5

            2.    When her mother passed away, Ms. Cabral used joint-account funds to pay her mother's bills..........................................................................................5

            3.    Then Ms. Cabral used joint-account funds to pay her own medical bills and provide for her daughter and grandchildren................................................6

            4.    Unable to repay the joint-account, Ms. Cabral stopped making withdrawals and apologized when agents interviewed her. ............................................6

      B.    Why the parties' joint-recommendation for probation makes sense.......................7

            1.    It fulfills Congressional intent. ...................................................................7

            2.    It fulfills current Commission policy. .........................................................8

            3.    It fulfills future Commission policy. ...........................................................8

            4.    It's consistent with the applicable Guideline range....................................9

            5.    It's authorized by law. ..............................................................................9

            6.    It accounts for Ms. Cabral's motive. .........................................................9

            7.    It accounts for Ms. Cabral's medical issues. ............................................10

            8.    It provides efficient restitution to the victim.............................................11

            9.    It provides just punishment.....................................................................11

            10.   It promotes respect for the law................................................................12

III.  Conclusion..............................................................................................................12

## I.   Introduction

The parties jointly ask the Court to impose a sentence of 5 years probation. To assist the Court, here's a chart capturing the 10 reasons why this recommendation makes sense:

| §3553(a) Chart ||
|---|---|
| **Point** | **Authority** |
| It fulfills Congress's intent to promote non-custodial sentences for first-time, non-violent offenders like Ms. Cabral. | *See* 18 U.S.C. § 3553(a)(5)(A) (courts consider Congress's policy statements when fashioning a sentence, and Congress favors non-custodial sentences in situations like this one). |
| It fulfills the Commission's intent to promote non-custodial sentences for first-time, non-violent offenders like Ms. Cabral. | *See* 18 U.S.C. §3553(a)(5)(A) (courts consider the Commission's policy statements when fashioning a sentence, and the Commission favors non-custodial sentences in situations like this one, as captured in §5C1.1, app. Note 4). |
| It fulfills the Commission's future intent, as it proposed amending the Guidelines in November 2023 to increase non-custodial sentences for "zero-point offenders" like Ms. Cabral. | *See* 18 U.S.C. §3553(a)(5)(A) (courts consider the Commission's policy statements when fashioning a sentence). |
| Ms. Cabral's advisory range is 0-6 months. | *See* 18 U.S.C. §3553(a)(4) (courts consider the applicable guideline range and whether the parties seek a variance from it). |
| Ms. Cabral is statutorily-eligible for probation. | *See* 18 U.S.C. §3553(a)(3) (courts consider whether probation is an option). |
| Motive matters, and Ms. Cabral used joint-account funds in part to pay her mom's medical bills and funeral expenses. | *See*, *e.g.*, *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993) (motive matters in a sentencing analysis); *see also* 18 U.S.C. §3553(a)(1) (courts consider an offense's circumstances). |

| §3553(a) Chart | |
|---|---|
| **Point** | **Authority** |
| Ms. Cabral suffers from mental health issues (severe PTSD, anxiety, and agoraphobia), as well as physical issues (Type 2 diabetes, high blood pressure, high cholesterol, and severe asthma), making a custodial sentence more complicated, costly, and punitive. | *See* 18 U.S.C. §3553(a)(2)(D) (courts consider an individual's medical needs). |
| Ms. Cabral is currently employed, has saved $1,200 towards restitution, and will continue to save. | *See* 18 U.S.C. §3553(a)(7) (courts consider "the need to provide restitution to any victims"). |
| Probation sentences punish. | *See*, *e.g.*, *U.S. v. Bennett*, 2008 WL 2276940 at *5 (D. Neb. May 30, 2008) (probation subjects individual to substantial liberty restrictions); *see also* 18 U.S.C. §3553(a)(2)(A) noting courts consider the need to provide just punishment). |
| Non-custodial sentences can promote respect for the law. | *See*, *e.g.*, *U.S. v. Bennett*, 2008 WL 2276940 at *5 (D. Neb. May 30, 2008) (probation promotes respect for the law by showing options exist besides prison); *see also* 18 U.S.C. §3553(a)(2)(A) (courts consider the need to promote respect for the law). |

The full reasons for Ms. Cabral's request are set forth below.

## II.    Discussion

### A.    What happened.

#### 1.    Ms. Cabral moved to Nevada to care for her ailing mother.

In early-2016, Ms. Cabral moved to Nevada to care for her ailing mother (Elsie Napier), who suffered from lymphoma and liver cirrhosis.[1] She moved in with her mother and step-father (Richard Napier) and took over many tasks, including the following: 1) providing day-to-day physical care for her mom; 2) taking her mom to medical appointments; and 3) paying her mom's bills. To that end, Ms. Napier and Ms. Cabral opened a joint bank account where she (Ms. Napier) received monthly deposits for social security retirement benefits.[2]

#### 2.    When her mother passed away, Ms. Cabral used joint-account funds to pay her mother's bills.

On September 9, 2016, Ms. Napier passed away due to complications from cirrhosis.[3] Because Ms. Napier's medical issues meant she spent lengthy periods in the hospital, she accumulated roughly $13,000 in medical bills not covered by insurance. Ms. Cabral also accumulated roughly $4000 in funeral expenses. Ms. Cabral used their joint account—funded by Ms. Napier's retirement benefits—to pay these expenses. Ultimately, it took months to pay these bills, as Ms. Cabral entered into payment plans for both the medical bills and funeral expenses.

---

[1] *See* ECF No. 24, ¶10 (Draft PSIR).
[2] *See* ECF No. 24, ¶10 (Draft PSIR).
[3] *See* ECF No. 24, ¶10 (Draft PSIR).

### 3. Then Ms. Cabral used joint-account funds to pay her own medical bills and provide for her daughter and grandchildren.

After her mother's death, Ms. Cabral lived with Mr. Napier for several months before moving in May 2017. As Ms. Cabral drove to Oregon (to live with family), an oncoming car clipped her own, producing a multi-car collision.[4] Unable to work, and now saddled with new medical bills to pay, Ms. Cabral used joint-account funds to pay those bills. She also used joint-account funds to help her daughter and granddaughter, who were struggling financially. Ms. Cabral knew she was in the wrong, but justified her actions based on a plan to reimburse the joint-account with insurance monies from her car accident.

### 4. Unable to repay the joint-account, Ms. Cabral stopped making withdrawals and apologized when agents interviewed her.

In January 2020, Ms. Cabral received insurance monies (roughly $16,000), but those monies weren't enough to replace what she took ($29,100). Not wanting to continue this financial slide, she stopped making withdrawals from the joint-account and, shortly thereafter, the joint-account closed.

In early-August 2020, Ms. Cabral, who was now living with her daughter (Jennifer Leslie) in the Tri-Cities, experienced a falling out with her daughter over

---

[4] *See* ECF No. 24, ¶15 (Draft PSIR).

money.[5] Ms. Leslie became accustomed to Ms. Cabral helping her out financially, and when Ms. Cabral stopped helping out, Ms. Leslie became upset.

Parting ways with her daughter, Ms. Cabral moved to Pocatello in late-August 2020. Two months later, October 2020, agents arrived at Ms. Cabral's house and asked about the joint-account.[6] She promptly apologized, explained how she used the money, and offered to set up a repayment plan.

**B.    Why the parties' joint-recommendation for probation makes sense.**

**1.    It fulfills Congressional intent.**

This recommendation fulfills Congress's intent to promote non-custodial sentences for first-time, non-violent offenders. When it passed the Sentencing Reform Act of 1984 (the law creating the Commission), Congress instructed the Commission to promulgate guidelines that favor non-custodial sentences for first-time offenders. *See* 28 U.S.C. § 994(j) ("The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense"). This is a §3553(a) factor, and it cuts in Ms. Cabral's favor. *See* 18 U.S.C. §3553(a)(5)(A) (courts consider Congress's policy statements when fashioning a sentence).

---

[5] *See* ECF No. 24, ¶51 (Draft PSIR).

[6] *See* ECF No. 24, ¶15 (Draft PSIR).

### 2. It fulfills current Commission policy.

This recommendation fulfills the Commission's existing intent to promote non-custodial sentences for first-time, non-violent offenders. *See* U.S.S.G. §5C1.1 (2022) app. Note. 4 ("If the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment"). This is a §3553(a) factor, and it cuts in Ms. Cabral's favor. *See* 18 U.S.C. §3553(a)(5)(A) (courts consider policy statements made by the Commission when fashioning a sentence).

### 3. It fulfills future Commission policy.

This recommendation fulfills the Commission's future intent to increase the use of non-custodial sentences for first-time, non-violent offenders. In February 2023, the Commission published proposed amendments to the Guidelines for the 2023 amendment cycle (the book gets updated every year in November). One proposed amendment creates a new guideline (§4C1.1), which contains a downward adjustment for "zero-point offenders," provided they satisfy criteria akin to safety-valve eligibility under §3553(f)—that is, the individual 1) has no scorable history, 2) didn't use violence during this offense, 3) didn't seriously hurt or kill anyone, 4) didn't cause serious financial hardship to a victim, 5) was not a big-fish in a larger offense, and

6) wasn't a dangerous sex offender.[7] Ms. Cabral fits this mold, making this a §3553(a) factor that cuts in her favor. *See* 18 U.S.C. §3553(a).

### 4. It's consistent with the applicable Guideline range.

Ms. Cabral's advisory range is 0-6 months, and the parties seek a sentence within that range (probation). This §3553(a) factor cuts in Ms. Cabral's favor. *See* 18 U.S.C. §3553(a)(4) (courts consider the applicable guideline range).

### 5. It's authorized by law.

Ms. Cabral is statutorily-eligible for probation.[8] This §3553(a) factor cuts in Ms. Cabral's favor. *See* 18 U.S.C. §3553(a)(3) (courts consider "the kinds of sentences available").

### 6. It accounts for Ms. Cabral's motive.

At sentencing, motive matters. *See*, *e.g.*, *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993) (citation omitted) ("Motives are most relevant when the trial judge sets the defendant's sentence, and it is not uncommon for a defendant to receive a minimum sentence because he was acting with good motives, or rather high sentence because of his bad motives"). Here, Ms. Cabral initially used joint-account funds to pay her mother's hospital bills, as well as the funeral expenses. Then she used joint-account

---

[7] Proposed 2023 Amendments to the Federal Sentencing Guidelines at 182 | United States Sentencing Commission (ussc.gov), last accessed on April 5, 2023.
[8] *See* ECF No. 24, ¶89 (Draft PSIR) ("The defendant is eligible for up to 5 years probation because the offense is a misdemeanor. 18 U.S.C. §3561(c)(2).").

proceeds to pay her own medical bills, along with helping out her financially-struggling daughter. These circumstances differ from an individual who uses unlawful monies to fund a lavish lifestyle. This §3553(a) factor cuts in Ms. Cabral's favor. *See* 18 U.S.C. §3553(a)(1) (courts consider the "nature and circumstances of the offense," which includes motive).

### 7. It accounts for Ms. Cabral's medical issues.

Ms. Cabral is a 56-year-old woman with no criminal history and a long list of medical issues. Some of those issues are psychological (she suffers from severe PTSD stemming from years of domestic abuse, as well as anxiety and agoraphobia, which is why she qualifies for disability payments);[9] some of those issues are physical (she's an insulin-dependent Type 2 diabetic, and she also suffers from high blood pressure, high cholesterol, and severe asthma).[10] These medical issues make placement in the BOP more complicated and expensive; they also make BOP placement more punitive for an individual with diagnosable conditions that cause her anxiety when she's around others. These are §3553(a) factors the Court considers at sentencing, and they cut in Ms. Cabral's favor. *See* 18 U.S.C. §3553(a)(1), (a)(2)(D) (courts consider "the history and characteristics of the defendant," as well as the need to "provide the defendant with needed…medical care").

---

[9] *See* ECF No. 24, ¶¶ 59-62 (Draft PSIR).
[10] *See* ECF No. 24, ¶¶ 55-58 (Draft PSIR).

### 8. It provides efficient restitution to the victim.

For the first time in 15 years, Ms. Cabral is employed. In September 2022, she secured a part-time job at Quality Home Health, providing in-home care to the elderly.[11] It's a unique position that allows Ms. Cabral to work in a 1-on-1 environment, which prevents her anxiety and agoraphobia from flaring up. Since starting her job, Ms. Cabral has saved $1,200—a payment she'll apply towards restitution. It's a good-faith start, and keeping Ms. Cabral out-of-custody and on probation keeps those payments coming, which is a §3553(a) factor that cut in her favor. *See* 18 U.S.C. §3553(a)(7) (courts consider "the need to provide restitution to any victims of the offense.").

Also, if the Court incarcerated Ms. Cabral for 1 year (the statutory maximum for a misdemeanor), the cost to incarcerate her ($44,258), which exceeds what she took from the Government ($29,100).[12]

### 9. It provides just punishment.

Probation sentences punish. *See*, *e.g.*, *U.S. v. Bennett*, 2008 WL 2276940 at *5 (D. Neb. May 30, 2008) (noting "offenders on probation are subject to several substantial restrictions on their liberty, including provisions requiring that they may not leave the judicial district, move, or change jobs without notifying their probation officer

---

[11] *See* ECF No. 24, ¶¶ 72 (Draft PSIR).
[12] *See* ECF No. 24, ¶¶ 94, 97 (Draft PSIR).

or the court, that they report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, refrain from excessive drinking, and submit to drug testing."). Because Ms. Cabral would be subject to these restrictions on her liberty for 5 years, this is a lengthy term of punishment, which cuts in Ms. Cabral's favor. *See* 18 U.S.C. §3553(a)(2)(A) (noting courts consider the need to "provide just punishment for the offense").

      **10.**    **It promotes respect for the law.**

Non-custodial sentences can promote respect for the law. *See*, *e.g.*, *Bennett*, 2008 WL 2276940 at \*5 ("A sentence of probation rather than incarceration can work to promote the sentencing goal of respect for the law by illustrating a rejection of the view that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."). This factor cuts in Ms. Cabral's favor. *See* 18 U.S.C. §3553(a)(2)(A) (noting courts consider the need to "promote respect for the law").

### III. Conclusion

For the reasons set forth above, Ms. Cabral respectfully asks the Court to adopt the parties' joint recommendation and impose 5 years of probation.

Dated: April 5, 2023.

        Federal Defenders of Eastern Washington & Idaho

        s/John B. McEntire, IV
        John B. McEntire, IV, WSBA No. 39469
        10 North Post Street, Suite 700
        Spokane, Washington 99201
        t: (509) 624-7606
        jay_mcentire@fd.org

### Service Certificate

I certify that on April 5, 2023, I filed this document on ECF, which will notify the following Assistant United States Attorneys: Dan Fruchter.

        s/John B. McEntire, IV
        John B. McEntire, IV, WSBA No. 39469
        10 North Post Street, Suite 700
        Spokane, Washington 99201
        t: (509) 624-7606
        jay_mcentire@fd.org